UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| MICHAEL E. GHRIST, | ) |
| :--- | :--- |
| Plaintiff, | ) ) ) |
| vs. | ) Cause No. 1:17-cv-1514-WTL-DML ) |
| ATOS IT SOLUTIONS AND SERVICES, INC., | ) ) ) |
| Defendant. | ) |

## ENTRY ON MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court on the motions for summary judgment filed by Plaintiff Michael E. Ghrist (Dkt. No. 41) and Defendant ATOS IT Solutions and Services, Inc. ("ATOS") (Dkt. No. 52). The motions are fully briefed and the Court, being duly advised, **DENIES** the Plaintiff's motion and **GRANTS** the Defendant's motion for the reasons set forth below.

### I. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed, and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, a party who bears the burden of proof on a particular issue may not rest on its pleadings, but must show what evidence it has that there is a genuine issue of material fact that requires trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Finally, the non-moving party bears the burden of specifically

identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

Furthermore, when the Court reviews cross-motions for summary judgment, as is the case here, "we construe all inferences in favor of the party against whom the motion under consideration is made." *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008) (quotation omitted). "'[W]e look to the burden of proof that each party would bear on an issue of trial.'" *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007) (quoting *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)).

## II.     FACTUAL BACKGROUND

The Plaintiff was an employee of the Defendant and its corporate predecessors for over twenty-five years. The Plaintiff voluntarily left his position with the Defendant in February 2017. During his employment with the Defendant, the Plaintiff worked in various sales capacities under various commission plans pursuant to which the Defendant compensated the Plaintiff according to a variety of payment arrangements, including base compensation and commissions. In April 2016, the Defendant issued the Plaintiff a Sales Executive Compensation and Commission Plan (the "2016 Sales Plan"). The Plaintiff signed an acknowledgment of receipt of the 2016 Sales Plan on April 14, 2016.

The Defendant assigned the Plaintiff a 2016 sales quota of $50,000,000.00, and he was paid a base salary of $180,425.16 that year. Beginning in February 2016, the Plaintiff worked on a combined deal with Ashland and Valvoline (the "Deal") as a Sales Lead. The Deal closed on October 31, 2016, and was valued at $103,787,676.00.

Under the 2016 Sales Plan, commissions were to be paid at set rates assuming a certain profit margin was surpassed, subject to a twenty-five percent holdback provision. The Deal surpassed the requisite profit margins, and on January 20, 2017, the Defendant paid the Plaintiff a commission of $131,250.00. The Defendant also paid Michael Kollar, the Defendant's Chief Digital Officer, $125,000.00 for his work on the Deal. The Plaintiff resigned on February 10, 2017. The Plaintiff now brings claims for breach of contract, unjust enrichment, and violation of the Indiana Wage Payment Statute, Indiana Code § 22-2-5, arguing that he is owed an additional $238,927.81 in commission under the 2016 Sales Plan.

### III.  DISCUSSION

#### A.  Breach of Contract

"The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages." *Rice v. Hulsey*, 829 N.E.2d 87, 89 (Ind. Ct. App. 2005). The Defendant argues that it is entitled to summary judgment on this claim because (1) the 2016 Sales Plan is not a contract and (2) even if the Court were to consider it a contract, it has not been breached.

A contract requires "offer, acceptance, consideration, and a meeting of the minds of the contracting parties." *Mueller v. Karns*, 873 N.E.2d 652, 657 (Ind. Ct. App. 2007). The Defendant argues that the 2016 Sales Plan is not a contract because the acknowledgment form that the Plaintiff signed explicitly states as much. In full, it reads:

> I understand information contained in this Plan and written or other verbal information relating to the Plan, does not constitute an implied or express contract or binding agreement between [the Defendant] and an employee and [the Defendant] reserves the right at its sole discretion to change, modify, vary from with regard to some or all participants, alter, or eliminate, in part or entirety, this Plan at any time.

3

Dkt. No. 53-3 at 2. Here, the 2016 Sales Plan contained disclaimer language and gave the Defendant the unilateral power to modify its terms,[1] and therefore "certainly cannot be said to contain a 'clear promise' which [the Plaintiff] could reasonably believe constitutes an 'offer.'" *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 721 (Ind. 1997). While the Plaintiff objects to the application of *Orr* because that case addresses a signed employee handbook as opposed to a compensation plan, this distinction does not call for a different result. The Court thus holds that, as a matter of law, the 2016 Sales Plan was not a contract, and **GRANTS** the Defendant's motion and **DENIES** the Plaintiff's cross motion as to the Plaintiff's breach of contract claim.

### B. Violation of Indiana Wage Statute

The Plaintiff alleges the Defendant violated the Indiana Wage Statute, which "provides an avenue for relief to employees seeking unpaid wages who voluntarily leave their employment." *Treat v. Tom Kelley Buick Pontiac*, 646 F.3d 487, 490 (7th Cir. 2011). Here the question as to whether the Plaintiff may bring a claim under the statute is whether the commission to which he argues he was entitled qualifies as wages under the statute. In order to determine whether a commission is considered wages under the statute, the Court is to consider the following factors:

(1) whether the commission is easily calculated and paid within ten days after it was earned;

(2) whether the commission is linked to a contingency outside the employee's control;

---

[1] While there is an interpretive question as to whether the 2016 Sales Plan was intended to allow for retroactive modifications as well as prospective ones, the relevant question here is whether one could reasonably believe that the distribution of the 2016 Sales Plan was a contractual offer, given the disclaimer and the unilateral ability of one party to modify its terms. *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 721-22 (Ind. 1997). The Court holds that, as a matter of law, one could not.

4

(3) whether the commission is linked to the amount of time the employee worked;

(4) whether the commission was paid on a regular basis and whether the amount of commission payments could vary widely from month-to-month; and

(5) whether the commission was paid in addition to the employees salary.

*Brown v. Bucher & Christian Consulting, Inc.*, 87 N.E.3d 22, 28 (Ind. Ct. App. 2017).

With regard to the first factor, the Plaintiff argues that the amount due was easily calculable within ten days after it was earned. According to the Plaintiff:

> [T]he Sales Plan allowed [the Defendant] to calculate the commission immediately after [the Plaintiff] finalized the Deal. The Deal contained no future payments to consider or profit margins to calculate. In fact, the Sales Plan provided clear examples as to how commission payouts would be made. The controlling language was simple: where a sales executive exceeded his quota and closed a deal worth $X, while meeting clearly stated qualifying events, he earned $Y.

Dkt. No. 42 at 11. The Defendant, however, argues that this is not the case, as:

> commissions under the 2016 Sales Plan required complex calculations and were never intended to be paid within ten days. After the closing of a deal such as the one at issue, commission calculations required the completion of a RAINBOW [(Risk Assessment in Named Business Opportunities Worldwide)] handover review, which was a review of the deal by an internal ATOS team to determine the deal's gross project margin, among other things. This process required calculation of the deal's financials and a review and approval of the deal by an internal review team. Plaintiff admits he was never paid commissions within ten days of a deal's close at any point during his employment with [the Defendant].
>
> Further, the 2016 Sales Plan provides that commissions would be paid "within 60 days following the month of deal closing"—significantly more than ten days. Notably, in [*Thomas v. H&R Block E. Enters., Inc.*, 630 F.3d 659, 664 (7th Cir. 2011)], the Seventh Circuit concluded that compensation was not a wage, where the compensation description indicated that the compensation would be paid after the expiration of a ten-day period, "or as soon thereafter as is reasonable under the circumstances," because the parties understood and expected payment would take more than ten days. *Thomas*, 630 F.3d at 666.

Dkt. No. 53 at 20 (internal citations omitted). While the Court acknowledges the Defendant's contention that the 2016 Sales Plan's sixty-day time-period for payments is evidence that the

parties understood that calculations may take some time, Dkt. No. 58 at 13-14, the critical inquiry is into the relative difficulty of calculating and paying the amount within ten days. Neither party has presented evidence from which this determination could be made, and therefore the Court declines to consider this factor in either party's favor.

Next, with regard to the second factor, the Plaintiff argues that:

> [The Defendant] did not link the commission to any contingency outside of [the Plaintiff's] control. It only related to his job performance, abilities and work effort and the amount of the deal on which he performed a lead role. In short, if he closed any deal meeting the Sales Plan's requirements, [the Defendant] owed an easily calculable commission. [The Plaintiff] did not need to wait for [the Defendant's] year end profit margins, further adjustments to the deal, input from other parties, or the financial success of the company. Rather, all of the terms which directly relate to the qualifying events were known at the outset and throughout the entirety of the negotiation of the Deal. When the Deal was finally closed due to [the Plaintiff's] work, [the Defendant] owed him the commission. The Sales Plan's express language identified as much.

Dkt. No. 42 at 11 (internal footnotes omitted). The Defendant, however, counters by noting that the Plaintiff's contingency was dependent on various calculations, including the profit margin, the cost of goods and services included in the deal, and the RAINBOW review. Dkt. No. 21 at 44. The Plaintiff counters that the Defendant is broadening the scope of the contingencies too far; however, the cases cited by the Plaintiff lead to no such conclusion. Additionally, the Plaintiff argues that the profit margins and costs of goods and services were known throughout the course of the deal, and that the twenty-five percent holdback provision was in place to address such contingencies. Such arguments, however, fail to address that the commission was based on the profitability of the Deal, as opposed to solely factors within the Plaintiff's control. Therefore, this factor weighs in favor of the Defendant.

With regard to the third factor, the Plaintiff acknowledges that his commission "was not a specific amount of time the [Plaintiff] worked," but argues that the Defendant's promise to pay within sixty days suggests that it should be considered a wage. Dkt. No. 42 at 11-12. While the

6

Plaintiff notes that "when a particular form of compensation is paid annually, it is less likely to be considered a wage," *Thomas*, 630 F.3d at 665, this does not change the fact that it is still not tied to the amount of time the Plaintiff worked, and thus weighs in favor of the Defendant.

As for the fourth factor, whether the commission was paid on a regular basis and whether the amount of commission payments could vary widely from month-to-month, this clearly weighs in favor of the Defendant as the commissions did vary widely and were not regularly paid. The fifth factor is equally clear, as the Plaintiff does not contest that the commission was paid in addition to his salary. Considering the factors discussed above, the Court finds that the Plaintiff's claim under the Indiana Wage Statute fails as a matter of law. Accordingly, the Court **GRANTS** summary judgment to the Defendant on this claim and **DENIES** the Plaintiff's cross-motion for summary judgment.

### C. Unjust Enrichment

"To prevail on a claim of unjust enrichment, [the Plaintiff] must establish that a measurable benefit has been conferred on the [D]efendant under such circumstances that the [D]efendant's retention of the benefit without payment would be unjust." *Zoeller v. E. Chicago Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009). In addition, the Plaintiff "must prove that the [D]efendant expressly or impliedly requested the benefits that he or she received from the [P]laintiff." *Coleman v. Coleman*, 949 N.E.2d 860, 866 (Ind. Ct. App. 2011). The Plaintiff argues that the Deal is the measurable benefit and that the circumstances surrounding the Defendant's retention, including the Defendant's drafting of the 2016 Sales Plan, with which he was expected to comply and for which he was promised compensation, are sufficient to support a claim. Furthermore, the Plaintiff notes that there is a proper nexus between the benefit he conferred upon the Defendant and what he expected the Defendant to pay.

7

The Defendant, however, counters that the Plaintiff's claim fails because "he did not render a benefit to [the Defendant] that [the Defendant] retained without paying for it." Dkt. No. 53 at 25. According to the Defendant, it "exercised the discretion it reserved under the 2016 Sales Plan to fairly compensate the employees responsible for securing the AV deal," and did so by paying him $131,250.00. *Id*.

The problem for the Plaintiff is that he has not pointed to evidence establishing the measurable benefit provided. *See Abrams v. Unity Mut. Life Ins. Co.*, 237 F.3d 862, 866 (7th Cir. 2001) (finding, albeit under New York law, that summary judgment was appropriate where the plaintiff "did not produce the evidence necessary to create a genuine issue of fact on the question of the value of his services for unjust enrichment purposes"). The Plaintiff cites the value of the Deal as the measurable benefit, but that value is not an estimated value of the Plaintiff's work, but rather the value of the Deal, i.e., the value of the services to be provided under the Deal. Indeed, the Plaintiff implicitly acknowledges that this is not the measurable benefit he provided; he is not seeking to recover the value of the Deal but rather the value of the commission he believes he would have been entitled under the 2016 Sales Plan.

Critically, the Plaintiff was compensated for his work on the Deal, and does not point to any evidence which suggests that the measurable benefit of the work he provided was worth more than the compensation he received. The Plaintiff argues that he was entitled to $370,177.81, but he only points to the 2016 Sales Plan to support this figure. In so doing, the Plaintiff is attempting to have the Court enforce the 2016 Sales Plan as though it were a contract. To this point, while the Plaintiff points to evidence that the Deal was worth $103,787,676.00 and to the potentially applicable commission rates under the 2016 Sales Plan to a deal of that size, he points to no evidence which could establish that the measurable benefit to the Defendant of the

Plaintiff's work on the Deal surpassed the $131,250.00 already paid to him. Similarly, the Defendant paid the Plaintiff a $131,250.00 commission, and the Plaintiff points to no evidence which could establish that it was unjust for the Defendant to retain funds in excess of that amount. Simply put, there is no evidence here that the payment the Defendant made to the Plaintiff was inequitable. Therefore the Court **GRANTS** the Defendant's motion for summary judgment as to this claim, and **DENIES** the Plaintiff's motion.

## IV. CONCLUSION

For the reasons set forth above, the Defendant's motion for summary judgment, Dkt. No. 52, is **GRANTED** and summary judgment is entered in favor of the Defendant on all of the Plaintiff's claims. The Plaintiff's motion for summary judgment, Dkt. No. 41, is **DENIED**.

SO ORDERED: 11/28/18

_William T. Lawrence_

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification